**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL CASE NO. 24-94-DLB-CJS**

**EDGAR T. RAGOUZIS**                                                  **PLAINTIFF**

**v.**                         **MEMORANDUM OPINION AND ORDER**

**RICHARD O. HAMILTON, JR., et al.**                         **DEFENDANTS**

                                            \*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon two Motions filed by Defendant Richard O. Hamilton, Jr.: (1) Motion for Judgment on the Pleadings (the "MJOP") (Doc. # 16) and (2) Motion for Extension of Time to File Reply in Support of Motion for Judgment on the Pleadings (the "Motion to Extend") (Doc. # 27). The Motions are either fully briefed or the time for submitting responses has expired. For the following reasons, the MJOP is **denied** and the Motion to Extend is **denied as moot**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This matter stems from Defendant Richard O. Hamilton, Jr.'s agreement to provide legal services for Plaintiff Edgar T. Ragouzis and others. (Doc. # 1 ¶ 8). Ragouzis is an individual and resident of Hamilton County, Ohio. (*Id.* ¶ 2). Hamilton is an attorney licensed to practice law in Kentucky and Ohio, and is a resident of Campbell County, Kentucky. (*Id.* ¶¶ 3, 7).

On August 29, 2022, Ragouzis engaged Hamilton to represent him and others in two cases pending before the Hamilton County (Ohio) Court of Common Pleas, Civil Division. (*Id.* ¶ 8). In both cases, Ragouzis asserted various claims against The Madison

House Condominium Owners' Association (the "Association") as well as other parties. (*Id.* ¶¶ 8-9). Ragouzis formally retained Hamilton by meeting Hamilton at his home and paying him a $5,000 retainer fee. (*Id.* ¶ 10). Despite this, Ragouzis claims that there was never a formal representation agreement outlining the specific legal services Hamilton was to provide. (*Id.*).

On November 21, 2022, Hamilton filed a verified complaint on Ragouzis and other plaintiffs' behalf, asserting various claims against the Association and other defendants. (*Id.* ¶ 11). Thereafter, on May 26, 2023, the Association and other defendants moved to disqualify Hamilton and his law firm from representing the plaintiffs. (*Id.* ¶ 13). The motion to disqualify was based on Hamilton's prior representation of Steven Oyster, who had served as an officer on the Association's board. (*Id.* ¶ 14). Ragouzis alleges that through his representation of Oyster, Hamilton came into possession of certain of the Association's business records which were supposedly privileged. (*Id.* ¶ 15). Ragouzis further alleges that "[a]t no time did Hamilton advise Ragouzis and the other plaintiffs that he had previously represented Steven Oyster in matters involving" the Association. (*Id.* ¶ 16).

On June 16, 2023, Hamilton filed a response to the motion to disqualify. (*Id.* ¶ 17). Hamilton charged Ragouzis legal fees for responding to the motion and appearing at a hearing on the motion "in an amount believed to be . . . over $140,000[.]" (*Id.* ¶¶ 17-18). Additionally, Hamilton allegedly shared documents Oyster provided to him with Ragouzis via a link to Hamilton's ShareFile account. (*Id.* ¶¶ 19, 21-22). In an affidavit in response to the motion to disqualify, however, Hamilton stated that he did not know how Ragouzis obtained one of the documents and later advised Ragouzis "to delete or destroy [the]

2

documents[.]"  (*Id.* ¶¶ 25-26).

Subsequently, on January 11, 2024, Hamilton allegedly "threatened to withdraw from representation" unless Ragouzis agreed to waive any claims he might have against Hamilton and his law firm.  (*Id.* ¶ 27).  In response, Ragouzis executed an affidavit through which he purportedly waived any such claims.  (*See* Doc. # 11-4).  Thereafter, on February 22, 2024, Hamilton moved to withdraw as counsel for Ragouzis and the other plaintiffs.  (Doc. # 1 ¶ 28).

On June 3, 2024, Ragouzis initiated this action by filing his Complaint asserting diversity jurisdiction under 28 U.S.C. § 1332.  (*See id.* ¶ 4).  Ragouzis asserts two causes of action against Hamilton and other unspecified defendants: one for breach of contract and one for professional negligence.  (*Id.* ¶¶ 30-42).  Hamilton filed his Answer on July 31, 2024.  (Doc. # 11).

On September 12, 2024, Hamilton filed the MJOP through which he requests that the Court grant judgment in his favor as to Ragouzis's claims against him.  (Doc. # 16).  Ragouzis filed a Response (Doc. # 26),[1] Hamilton filed a Reply (Doc. # 28), and the MJOP is ripe for review.[2]

---

[1]   Under Local Civil Rule 7.1(c), Ragouzis's Response was due on October 3, 2024.  After he failed to respond by that date, this Court on October 22, 2024, ordered Ragouzis to show cause within 14 days as to why his claims should not be dismissed for failure to prosecute.  (Doc. # 20).  Ragouzis filed his Response on November 5, 2024, or the date on which said 14-day period expired.  (Doc. # 26).

[2]   Also pending before the Court is Hamilton's Motion to Extend through which he requests a 14-day extension of time to file his Reply.  (Doc. # 27).  But before the Court could rule on the Motion to Extend, Hamilton filed his Reply on the date it was originally due.  (*See* Doc. # 28).  Accordingly, the Motion to Extend (Doc. # 27) is **denied as moot**.

## II. DISCUSSION

### A. Standard of Review

Hamilton moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. # 16). The standard of review for a Rule 12(c) motion is the same as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As the Supreme Court explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted).

When considering a Rule 12 motion, a district court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Hooker v. Anderson*, 12 F. App'x 323, 325 (6th Cir. 2001) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). However, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581-82 (citation and internal quotation marks omitted). The court should grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is

4

entitled to judgment as a matter of law." *Id.* at 582.

Federal courts apply the substantive law of the forum state in diversity actions. *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Therefore, Kentucky substantive law will apply to Ragouzis's claims. That said, federal pleading standards still control. *See Lee v. Vand. Univ.*, No.22-5607, 2023 WL 4188341, at *3 (6th Cir. June 22, 2023) (citing *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010)); *see also Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F.Supp.3d 764, 771-72 (E.D. Ky. 2017).

**B.   Analysis**

Hamilton moves for judgment on the pleadings as to Ragouzis's claims against him. (Doc. # 16). In support, Hamilton makes what the undersigned construes as four arguments. (*Id.*). First, Hamilton contests Ragouzis's claim that there was no agreement outlining the scope of representation, noting that the parties had executed engagement letters regarding both proceedings at issue. (*Id.* at 6-8). Second, Hamilton argues that Ragouzis had actual knowledge of Hamilton's prior representation of Steven Oyster. (*Id.* at 8-9). Third, Hamilton argues that he was required to respond to the motion to disqualify and advise Ragouzis to destroy privileged documents. (*Id.* at 9-10). Fourth and finally, Hamilton claims that Ragouzis voluntarily waived all claims against Hamilton and his law firm via affidavit. (*Id.* at 10-11). The Court addresses each argument in turn.

> **1.   *Hamilton has not demonstrated his entitlement to judgment on the pleadings despite his assertion that there were agreements outlining the scope of representation.***

Hamilton first challenges Ragouzis's claim that there was no agreement in place outlining the scope of representation. (Doc. # 16 at 6-8). In support, Hamilton notes that

5

the parties executed engagement letters regarding both proceedings at issue. (*Id.*). Hamilton attaches copies of the engagement letters to his MJOP. (Docs. # 16-1 and 16-2). According to Hamilton, "[i]t is clear from the engagement letters [that] Ragouzis had a written agreement with [Hamilton] governing the terms of representation for the litigation from which he complains." (*Id.* at 8). And in his Reply, Hamilton argues that the "engagement letters covered representation in the underlying cases, which inherently includes responding to motions[.]" (Doc. # 28 at 1).

As best the Court can tell, Hamilton argues that Ragouzis's claims fail because the engagement letters authorized Hamilton to respond to the motion to disqualify and bill Ragouzis for doing so. But apart from broadly citing the letters and claiming that their terms "inherently include[d] responding to motions," Hamilton does not demonstrate that this was the case. Indeed, Hamilton points to no language in the engagement letters authorizing his challenged actions in the circumstances. This is significant, as a Rule 12 movant "has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Roth*, 650 F.3d at 605 (noting that the Rule 12(b)(6) standard also applies to Rule 12(c) motions).

For these reasons, Hamilton's first construed argument in support of judgment on the pleadings is **rejected**.

> **2. *Even if Ragouzis had actual knowledge of Hamilton's prior representation of Steven Oyster, Hamilton has not demonstrated entitlement to his requested relief.***

Hamilton next argues that Ragouzis had actual knowledge of Hamilton's prior representation of Steven Oyster. (Doc. # 16 at 8-9). In support, Hamilton notes that on July 25, 2018—or over four years prior to engaging Hamilton—Ragouzis copied Hamilton

6

on an email he sent to Oyster and others. (*Id.* at 8). Hamilton further notes that he was not previously included in the email chain, and states that at the time he had not yet met Ragouzis. (*Id.* at 8-9). Hamilton attaches a copy of the July 25th email to his MJOP. (Doc. # 16-3). Hamilton also cites his Answer in which he alleges that individuals at his law firm had discussions regarding the prior representation of Oyster with Ragouzis in August 2022. (*Id.* at 9 (citing Answer ¶ 16)). According to Hamilton, these facts "demonstrate[ ] [that] Ragouzis had actual knowledge of Hamilton's prior representation of Oyster[.]" (*Id.*).

As an initial matter, the fact that Ragouzis added Hamilton to the email chain does not, by itself, demonstrate that he knew about Hamilton's prior representation of Oyster. Upon review, there is nothing in the text of the email itself that shows Ragouzis knew about the prior representation. (*See* Doc. # 16-3). And as far as Hamilton's allegations in his Answer are concerned, they are arguably inconsistent with allegations in the Complaint which the Court is required to accept as true and construe in the light most favorable to Ragouzis. *See Hooker*, 12 F. App'x at 325. Regardless, as Ragouzis notes in his Response, Hamilton's presence on the email chain (or Ragouzis's supposed knowledge of the prior representation) "does not mean [that Ragouzis] would be aware of a conflict of interest or understand the legal implications of . . . Hamilton representing the plaintiffs." (Doc. # 26 at 8-9). And as noted above, Hamilton bears the burden of showing that Ragouzis's claims fail. *See Total Benefits*, 552 F.3d at 434. Accordingly, the Court concludes that even if Ragouzis was aware of the prior representation, Hamilton has not demonstrated entitlement to his requested relief.

7

For these reasons, Hamilton's second construed argument in support of judgment on the pleadings is **rejected**.

### 3. *Hamilton's argument that he was required to respond to the motion to disqualify and advise Ragouzis to destroy supposedly privileged documents does not entitle him to judgment on the pleadings.*

Hamilton next argues that he was required to respond to the motion to disqualify and advise Ragouzis to destroy privileged documents. (Doc. # 16 at 9-10). In support, Hamilton claims that "[i]t is axiomatic that a party must respond to pending motions within the course of litigation." (*Id.* at 9). Hamilton further claims that he was required to advise Ragouzis to destroy the supposedly privileged documents under Ohio Civil Rule 45(D)(5). (*Id.* at 9-10).

As an initial matter, Hamilton cites no authority for his claimed axiom that a party must always respond to motions in litigation. Moreover, even if parties are generally required to respond to motions, Hamilton does not show that it was appropriate for him to do so (and bill Ragouzis for doing so) here, especially when he was "allegedly aware of a conflict of interest." (*See* Doc. # 26 at 7). And whether Hamilton was required to advise Ragouzis to destroy the Oyster documents appears to be beside the point. Upon review of his Complaint and Response, Ragouzis does not appear to claim that Hamilton's advice to destroy the documents itself constituted a breach of contract or professional misconduct. (*See* Docs. # 1 and 26). Again, it is Hamilton's burden to show that Ragouzis's claims fail. *See Total Benefits*, 552 F.3d at 434.

For these reasons, Hamilton's third construed argument in support of judgment on the pleadings is **rejected**.

8

### *4. Hamilton's waiver argument is inappropriate at this juncture.*

Hamilton finally argues that Ragouzis voluntarily waived all claims against Hamilton and his law firm via affidavit. (Doc. # 16 at 10-11). As Hamilton notes, Ragouzis executed an affidavit whereby he affirmed that he did "not have any claim of any nature against" Hamilton and the other attorneys at his law firm and "knowingly and voluntarily forever release[d]" any malpractice claim. (Doc. # 16-4). Hamilton attaches a copy of the affidavit to the MJOP. (*Id.*). Hamilton also cites his Answer in which he alleges (i) that Ragouzis "made threats and allegations against Hamilton which made it impossible for Hamilton to continue representing Ragouzis" and (ii) that Hamilton "advised Ragouzis to have an independent attorney advise him on how to proceed." (Doc. # 16 at 10-11 (citing Answer ¶ 27)).

"Wavier is an affirmative defense[,]" and a Rule 12 motion may only be granted "based on an affirmative defense when the facts conclusively establish the defense as a matter of law." *Insight Ky. Partners II, L.P. v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:16-cv-00625-CRS, 2017 WL 1193065, at *4 (W.D. Ky. Mar. 30, 2017) (internal citations and quotation marks omitted); *see also* Fed. R. Civ. P. 8(c)(1) (listing "release" and "waiver" as affirmative defenses). In other words, "the complaint must show on its face that the claim is barred by the defense." *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, No. 2:06-cv-00026-WOB-CJS, 2011 WL 2786301, at *1 (E.D. Ky. July 14, 2011).

Upon review, Ragouzis's Complaint does not clearly show that his claims are barred by Hamilton's waiver defense. Indeed, Ragouzis only briefly mentions the waiver in his Complaint, and does so seemingly to challenge whether the waiver was voluntary. (*See* Doc. # 1 ¶ 27 ("[Hamilton], on January 11, 2024, threatened to withdraw from

9

representation unless . . . Ragouzis provided a waiver of any claims he may file against Hamilton [and his law firm].").  To be clear, Ragouzis was not required to anticipate Hamilton's waiver argument, as "[t]o survive a Rule 12 motion a plaintiff generally need not plead the lack of affirmative defenses." *Littleton v. Ridley USA, Inc.*, No. 5:17-cv-00479-JMH, 2018 WL 1369913, at *4 (E.D. Ky. Mar. 16, 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)) (internal quotation marks omitted).  Accordingly, it would be inappropriate to grant Hamilton's MJOP based on his waiver argument at this juncture.

For these reasons, Hamilton's fourth construed argument in support of judgment on the pleadings is **rejected**.  Having rejected each of Hamilton's arguments for judgment on the pleadings, the Court will **deny** Hamilton's MJOP.

### III. CONCLUSION

Thus, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendant Richard O. Hamilton, Jr.'s Motion for Judgment on the Pleadings (Doc. # 16) is **DENIED**; and

(2) Defendant Richard O. Hamilton, Jr.'s Motion for Extension of Time to File Reply in Support of Motion for Judgment on the Pleadings (Doc. # 27) is **DENIED AS MOOT**.

This 9th day of February, 2025.



Signed By:
David L. Bunning      DB
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-94 MOO on MJOP.docx