UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 24-94-DLB-CJS

EDGAR T. RAGOUZIS                                                                PLAINTIFF

v.                             **MEMORANDUM ORDER**

RICHARD O. HAMILTON, JR., et al.                         DEFENDANTS

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court on Plaintiff Edgar Ragouzis's Response (Doc. # 58) to the Court's Order to Show Cause (Doc. # 56). In his Response, Plaintiff requests an extension of time to respond to Defendant's Motion for Summary Judgment (Doc. # 55).[1] (*Id.* at 2). For the following reasons, Plaintiff's Motion for Extension of Time to File Response (Doc. # 58) is **denied**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Court will not offer a detailed recitation of the facts underlying Plaintiff's Complaint, as they were set forth previously in the Memorandum Opinion and Order entered in this action on February 9, 2025. (*See* Doc. # 34 at 1-3). In summary, this matter stems from Defendant Hamilton's service as Plaintiff's attorney in two cases before the Hamilton County (Ohio) Court of Common Pleas. (Doc. # 1 ¶ 8). On November 21, 2022, Hamilton filed a complaint on behalf of Ragouzis and other plaintiffs, asserting

---

[1] Although the Federal Rules of Civil Procedure contemplate a formal motion when a party seeks an extension of time in these circumstances, the Court will construe Plaintiff's request as a motion for an extension of time to respond to Defendant's Motion for Summary Judgment. *See* Fed. R. Civ. P. 6(b)(1)(B).

various claims against The Madison House Condominium Owners' Association (the "Association") and other parties. (*Id.* ¶ 11). Thereafter, on May 26, 2023, the Association moved to disqualify Hamilton and his law firm from representing the plaintiffs because Hamilton had previously represented Steven Oyster, who had served as an officer on the Association's board. (*Id.* ¶ 14). Hamilton responded to the motion to disqualify and charged Ragouzis legal fees for his work. (*Id.* ¶¶ 17-18). Ragouzis alleges that Hamilton subsequently "threatened to withdraw from representation" unless Ragouzis agreed to waive any claims he might have against Hamilton and his law firm. (*Id.* ¶ 27). Hamilton ultimately moved to withdraw as counsel for Ragouzis and the other plaintiffs. (*Id.* ¶ 28).

Plaintiff filed his Complaint in this action on June 3, 2024 (*Id.*). Defendant Hamilton filed his Answer on July 31, 2024 (Doc. # 11). On September 12, 2024, Hamilton moved for Judgment on the Pleadings. (Doc. # 16). In the first of a pattern of noncompliance, Plaintiff failed to file a response to this motion within the timeframe established by Joint Local Rule 7.1(c). Accordingly, on October 22, 2024, the Court issued an Order directing Plaintiff to show cause, within fourteen days, why his claims should not be dismissed for failure to prosecute or file a written response pursuant to the Local Rules. (Doc. # 20). The Court admonished Plaintiff that failure to file a response in accord with Local Rule 7.1(c) "may '**be grounds for granting the** motion.'" (*Id.* at 1 (quoting L.R. 7.1(c))) (emphasis in original). The Court also warned that "**[f]urther failures of this nature may cause the Court to dismiss the case for failure to prosecute**." (*Id.*) (emphasis added). On November 5, 2025, Plaintiff filed a Response (Doc. # 26) in opposition to Defendant's Motion for Judgment on the Pleadings. Although he filed a Response, Plaintiff never addressed the Court's show cause Order or explained his failure to comply with Local

2

Rule 7.1(c).  Nevertheless, the Court accepted Plaintiff's Response and, ultimately, denied Defendant's Motion for Judgment on the Pleadings.  (Doc. # 34).

On December 30, 2025, Defendant filed a Motion for Summary Judgment on both claims raised by Plaintiff.  (Doc. # 55).  According to Local Rule 7.1(c), Plaintiff was required to file a response no later than January 20, 2026.  Plaintiff, for a second time, failed to file a response in compliance with Local Rule 7.1(c).  So, on January 27, 2026, the Court again issued an Order directing Plaintiff to show cause why his claims should not be dismissed.  (Doc. # 56).  Plaintiff responded to the Court's Order on February 3, 2026.  (Doc. # 58).

In his Response, Plaintiff states that his counsel, F. Harrison Green, sent Defense counsel an email on January 12, 2026, requesting an extension of time to respond to Defendant's Motion for Summary Judgment.[2]  (*Id.* at 1).  Plaintiff further states that Mr. Green held a telephone conference with Defendant's counsel, George D. Jonson, later that day.  (*Id.*).  At this conference, Plaintiff asserts that "it was agreed to that there would be an extension of time to respond to Defendant's Motion for Summary Judgment as Plaintiff's Counsel is undergoing a serious spine operation on February 6 of 2026[.]"  (*Id.*).  However, no formal motion for an extension of time to respond was filed with the Court.[3]  Plaintiff claims that his counsel prepared such a motion and an accompanying proposed order but neglected to file it with the Court "as had been previously intended."  (*Id.* at 2).  Plaintiff offers no reason for his failure to timely file a motion for extension, and he did not

---

[2]  Plaintiff attached a copy of this email to his Response.  (Doc. # 58-1).

[3]  On February 5, 2026, two days after filing his Response (Doc. # 58), Plaintiff provided the Court with a proposed order by way of his "Notice of Filing" and "Proposed Entry of Extension of Time."  (Doc. # 59).

3

include a formal motion or proposed order in his Response. (*Id.*). Instead, Plaintiff merely requests that "there be an Extension of Time to Respond to Defendant's Motion for Summary Judgment until February 13, 2026." (*Id.*).

## II.     DISCUSSION

In his Response (Doc. # 58), Plaintiff requests that the Court grant him an extension until February 13, 2026, to respond to Defendant's Motion for Summary Judgment. The Joint Local Rules for the Eastern and Western Districts of Kentucky provide that, "unless otherwise ordered by the Court, a party opposing a motion must file a response within 21 days of service of the motion." L.R. 7.1(c). Defendant's Motion for Summary Judgment was filed and served electronically on December 30, 2025. (Doc. # 55 at 22). Thus, according to the Local Rules, Plaintiff's response was due on January 20, 2026. Plaintiff's request for an extension was made on February 3, 2026—fourteen days after the deadline to respond to Defendant's Motion. (Doc. # 57). Therefore, Federal Rule of Civil Procedure 6(b) applies.

Under Rule 6(b), the Court may, for good cause, extend the time to complete an act which may or must be done within a specified time. This includes the time to respond to a motion for summary judgment. However, where a party seeks such an extension after the deadline to respond has passed, the Court can only grant such a request "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also Howard v. Nationwide Prop. And Cas. Ins. Co.*, 306 F. App'x 265, 266 (6th Cir. 2009) ("Because Plaintiff requested extension of the response deadline after the deadline had passed, the district court could grant the extension only if her failure to act resulted from excusable neglect."). "Neglect exists where the failure to do something occurred because

4

of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005). To determine whether such neglect is excusable, courts consider the following factors:

> (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith.

*Howard*, 306 F. App'x at 266 (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395 (1993))).

"The determination of excusable neglect is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395). Still, the Sixth Circuit has cautioned that excusable neglect is a "strict standard which is met only in extraordinary cases." *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006). Ultimately, "[w]hether excusable neglect exists, and whether a deadline should be extended are decisions left to the discretion of the district court." *Rodriguez v. Hirshberg Acceptance Corp.*, 62 F.4th 270, 276 (6th Cir. 2023) (citing *Howard*, 306 F. App'x at 266 (citation omitted)). So, the question before the Court is whether Plaintiff's failure to timely seek an extension of time to respond to Defendant's Motion for Summary Judgment was the result of excusable neglect. It was not.

Looking to the first factor, the Court finds that allowing Plaintiff to file an untimely response will not prejudice Defendant severely. Although the Court acknowledges that Defendant does not oppose Plaintiff's request (*see* Doc. # 58 at 1), granting Plaintiff's motion will further delay final adjudication of Defendant's motion. *See Washington v. Miami Cnty.*, No. 3:20-cv-173, 2022 WL 22715101, at *3 (S.D. Ohio Aug. 29, 2022)

5

(finding that a twenty-day extension of the time to respond to a motion for summary judgment would "prejudice[] Defendants by delaying adjudication of the case") (citing *Wilkerson v. Jones*, 211 F. Supp. 2d 856, 858-59 (E.D. Mich. 2002) (observing that delay in the adjudication of a case can prejudice the non-movants). However, at this stage of the litigation, such delay will not result in severe prejudice to Defendant. *See Stephens v. Allstate Vehicle and Prop. Ins. Co.*, No. 7:24-cv-46-REW-EBA, 2025 WL 1047706, at *2 (E.D. Ky. Apr. 8, 2025) (noting that risk of prejudice was "relatively minimal" where movant failed to timely respond to a motion for summary judgment). Thus, the Court finds that the first factor tilts slightly in favor of allowing Plaintiff's untimely response.

Turning to the second factor, the Court finds that Plaintiff's requested extension would cause an appreciable delay in the proceedings. Granting Plaintiff an extension through February 13, 2026—twenty-four days after his original deadline—would, when paired with a further extension to allow for Defendant's reply, cause a significant delay in resolution of the claims involved in this matter. Importantly, this would not be the first time Plaintiff's neglect has impeded the swift resolution of this case. Plaintiff previously delayed proceedings by failing to respond to Defendant's Motion for Judgment on the Pleadings. (*See* Doc. # 20). When engaged in the excusable neglect inquiry, the Court must consider a party's repeated failures to comply with the governing deadlines. *Nafziger*, 467 F.3d at 523 ("The district court, in accordance with *Pioneer's* command, properly considered these last two instances of neglect not in isolation, but by 'taking account of all relevant circumstances surrounding the party's omission.'") (quoting *Pioneer*, 507 U.S. at 395). Although Plaintiff's fourteen-day delay in seeking an extension of time to respond may not be the most egregious case on record, other district courts

have found similar delays significant.  See *Washington*, 2022 WL 22715101, at *3 (seventeen-day delay in seeking an extension of time to respond to a motion for summary judgment was a "significant delay"); *Duff v. Oak Ridge, Tenn.*, No. 3:10-cv-230, 2011 WL 4373929, at *2 (E.D. Tenn. Sept. 19, 2011) (second factor weighted against movant in light of a ten-day delay in seeking an extension of time to respond to a motion for summary judgment).

The third factor—the reason for Plaintiff's delay in seeking an extension—carries the most weight in the excusable neglect analysis.  *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) (holding that "the excuse given for the late filing must have the greatest import") (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (citations omitted)).  Unfortunately for Plaintiff's request, this is the factor that weighs most strongly against finding excusable neglect.  In his Response to the Court's Order to Show Cause (Doc. # 58), Plaintiff asserts that his counsel's surgery—scheduled for February 6, 2026—would have prevented him from filing a response to Defendant's motion on January 20, 2026.  (*Id.* at 1).  Even accepting this contention at face value, Plaintiff's counsel's inability to timely file a *response* in no way excuses his failure to timely *seek an extension*.  Indeed, Plaintiff claims that his counsel prepared such a motion and proposed order on January 12, 2026 but simply neglected to file it with the Court.  (*Id.* at 2).  Plaintiff offers no explanation whatsoever for this failure.  And this omission is even more inexcusable considering Plaintiff's previous behavior in this matter.  The Court has twice directed Plaintiff to show cause why his claims should not be dismissed for failure to prosecute in the wake of a missed deadline and Plaintiff has twice failed to offer any justification for his tardiness.  The Sixth Circuit has noted that "numerous instances of

7

previous dilatory conduct, accompanied by the court's repeated warnings" are important considerations in the excusable neglect analysis. *Nafziger*, 467 F.3d at 523. Such repeated delays and warnings "insult the court's dignity and create a tortured process." *Id.* The Court's first show cause order (Doc. # 20) put Plaintiff on unmistakable notice that failure to meet deadlines would carry significant repercussions. Plaintiff's most recent failure to comply with the Court's rules reflects a cavalier disregard for the judicial process that is simply inexcusable.

Furthermore, the delay in Plaintiff's seeking an extension was firmly within his control. This fourth factor relates closely to the third. By Plaintiff's own admission, his counsel knew that he would need an extension, at the latest, on January 12, 2026. (Doc. # 58 at 1). Thus, Plaintiff had more than a week to timely file a motion for an extension. Plaintiff does not claim that some intervening circumstance prevented his counsel from seeking an extension during this period. Instead, he merely states that a motion was "not filed with the Court as had been previously intended." (*Id.* at 2). Thus, Plaintiff's ability to comply with Rule 6(b) was within his control. Plaintiff cannot escape this reality by seeking to place the blame on his counsel's carelessness. Indeed, "the Supreme Court explicitly rejected a similar argument in *Pioneer*, holding that clients must 'be held accountable for the acts and omissions of their chosen counsel.'" *Nafziger*, 467 F.3d at 524 (quoting *Pioneer*, 507 U.S. at 396-97); *see also Allen v. Murph*, 194 F.3d 722, 723 (6th Cir. 1999) (observing that "an attorney's inexcusable neglect is normally attributed to his client").

Finally, the Court does not find that Plaintiff's failure to timely seek an extension was the result of any bad faith, underhanded tactics, or the like.

8

Considering these factors in the aggregate, the Court finds that Plaintiff's failure to timely seek an extension did not result from excusable neglect. Only two factors arguably weigh against this conclusion. But the reason for Plaintiff's delay, the third and most important factor, weighs strongly against allowing an extension here. *See Munoz*, 605 F.3d at 373. Moreover, Plaintiff's failure to seek an extension was entirely within his control and constitutes his second unexplained failure to respond to a dispositive motion. Finally, the requested extension would cause a significant delay in proceedings.

## III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiff's Motion for Extension of Time to File Response (Doc. # 58) is **denied**. The Court emphasizes that this ruling does not result in entry of judgment for Defendant on its pending Motion for Summary Judgment (Doc. # 55). "[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Accordingly, the Court will issue a separate ruling on the merits of Defendant's Motion in a subsequent Order.

This 10th day of February, 2026.

Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-94 MO re Motion for Extension.docx